versus Melinda Johnson. That's case number four one six zero one three two. Okay, the first case this morning is In re Estate of McNaught versus Melinda Johnson. Okay, the first case this morning is In re Estate of McNaught versus Melinda Johnson. That's case number four one six zero one three two. And for the appellate Andrew Carruthers, for the appellate Craig Randall. Before we begin, let me advise counsel and the parties that Justice Appleton is the third member of this panel. He cannot be here today. However, he's read the briefs. He will be reviewing the audio recording and fully participating in the final decision that this court makes. Having said that, Mr. Carruthers, please proceed. Thank you, Your Honor, and may it please the court and counsel. My name is Andrew Carruthers. I'm an attorney at Hepler Broome here in Springfield and Edwardsville. And I'm here today on behalf of Melinda Johnson. She's the executor for the Estate of David McNaught. Mr. McNaught is a farmer, a lifelong farmer, and a resident of here in Sangamon County. My client is the decedent sister, the executor's decedent sister, and as the named executor in his last will and testament has appealed the order of the trial court. Mr. McNaught passed away in June of 2014, and his estate remains pending here in the county. For a brief, very brief family background, and just to make sure the relevant timeline is why we're dating, I had a child in 2000. In 2003, the decedent made out a last will and testament, and then a few years later in 2006, the couple got married, but not before executing a premarital agreement. And those are the dates. It went, the daughter came, and then the will, and then the premarital agreement and marriage. The issue before the court is whether or not the decedent did not perform certain conditions of precedence in the premarital agreement that it should be excused and that his widow should be permitted to file a, as she already has of course, a renunciation of the last will and testament. Specifically, the 9th paragraph of the premarital agreement is instructive. The 9th paragraph of the premarital agreement states that essentially sets forth what is to happen upon his death. It sets forth that he is to provide for her by creating a trust, creating a trust by will or trust, and upon his death, a trust will be created into which his farmland will be transferred, and from which she will receive 50% of income from the trust until the earlier of the remarriage, her death, cohabitation, or until their youngest child reaches the age of 18. Incidentally, they only ever had one child. So those are the first conditions of paragraph 9, was the farmland go into a trust and that she be allowed to receive 50% of the income from that trust until those events. After that, the paragraph 9 specifically cites paragraph 7 of the premarital agreement and makes the decedent's performance of that condition with respect to a life insurance policy a condition precedent, and it also cites specifically paragraph 7, which specifically sets forth or imposes obligations on the decedent to name his spouse as the beneficiary on his retirement accounts. So those are the requirements in paragraph 9, just those, and then it says in exchange for those, she waives her right to renounce his last will and testament. Now, it's obviously our position that the decedent perform all of these obligations and that she should not be excused from disregard. Is there any dispute about that? Is the dispute only concerned paragraph 4? It does not, no. The court found that the decedent did not fulfill his obligations in paragraph 9. The court also which would excuse her from her obligations in the premarital agreement and allow her to renounce. The court also found that paragraph 4, which was not referenced in paragraph 9, was yet another obligation that was in the bargain for exchange for her waiver of the right to renounce. So that's what the trial court found. They found that the trial court found that the decedent did not fulfill his obligations in paragraph 4 or paragraph 9, which gives rise to her ability to renounce. What obligation did the trial court find in paragraph 9 that was not fulfilled? Only the first one. It's undisputed that he fulfilled the obligations in paragraph 6 and paragraph 7 with regard to the life insurance policy and retirement accounts. The decedent had an existing last will and testament that, again, he wrote three years earlier, which described her then as his girlfriend or as his friend and provided that upon his death she could receive 50 percent of the income from all of his assets until those same exact four events were to occur with minor differences. So it's our position that the decedent actually did comply with those because his existing 2003 will provided for all of his assets, not just the farmland as referenced in the primarial agreement, but all of his assets, to go into a trust upon his death from which she could receive 50 percent of income until the earlier of those four events. But the court found that because it wasn't a special trust specifically just for the farmland and that included more assets as bargained in the primarial agreement, that somehow that would impose additional duties on her that she didn't bargain for and as such he didn't fulfill his obligation. We take issue with that because we feel that if anything the decedent overperformed in this regard by allowing her to deduct from the will as opposed to the primarial agreement to draw more in assets, 50 percent from all of the income, not just off the farmland. The court saw that as a potential accounting nightmare for her and that she didn't bargain for. We disagree. First of all, the accounting nightmare, if any, wouldn't be hers. It's a pretty big assumption to make because my client as trustee, at least at present, she would be in the position to handle all of the accounting and all she would necessarily have to do is write a check to Mrs. McNutt and that would be it. So we don't really agree with the trial court's assumption that it would impose some additional duty on her because she's receiving more money than she bargained for in the primarial agreement. Another issue that the trial court found with the decedent's performance in paragraph 9 was that it contemplated, at least the primarial agreement contemplated them potentially having more children. It said that she could receive the 50 percent of income until the earlier of those four events but in the primarial agreement it said that the youngest of their children reaches the age of 18. The last will and testament executed three years earlier only referenced the one minor child that they had. Well, and the court saw that as well because the primarial agreement provided for her to receive 50 percent of income longer than the last will and testament. Therefore, they're inconsistent and he didn't fulfill his obligations by amending the will. You're making a new will or cause so we disagree because, in fact, they only ever had the one child. So he didn't need to update his estate planning or do anything else to fulfill his obligations as represented in the primarial agreement because they only ever had one. The trial court assumed that because they could have had more that this was an inconsistency and we disagree. I think it stands to reason that the court wants to take assumptions as it did. Unfortunately, throughout the order, as you'll see, the court drew pretty much every inference and assumption against the non-moving party rather than in favor of the non-moving party and saw every inference and assumption in favor of them as the moving party. And we think that if the court were to make assumptions, it could have found that, you know, if they actually had more children, the decedent could have updated his estate planning and maybe was waiting for that to happen before he took that rather expensive step. Since they, in fact, never had another child, we think it's a distinction without a difference. The court also took issue with – the court also took issue with – so that's the paragraph 9, essentially. We feel that he, by his existing will in 2003, had already satisfied all of his obligations in paragraph 9 with respect to the farmland that was to be transferred to the trust, 50 percent of the income going to her. As I've indicated, she was going to get more money by the will than from the primarial agreement and that any of these other minor differences are not sufficient to render the entire thing unenforceable. The court also found that paragraph 4 – and this is where we really take exception – that paragraph 4 of the primarial agreement in the decedent's apparent failure to fulfill the obligations with respect to paragraph 4 invalidates the whole agreement. We disagree. As I've indicated, paragraph 9 specifically sets forth what is bargained for in exchange for her waiver of the right to renounce. And it is the farmland trust. As I said, that's already been fulfilled. Paragraphs 9 specifically cites paragraph 6 and paragraph 7. It doesn't mention paragraph 4 with respect to residency. Paragraph 4 of the primarial agreement specifically said that the decedent by will or trust shall provide for his wife to live in the house basically they lived in, which is the family homestead, for as long as she so desires. Now, the last will and testament, written three years earlier, also gives her this right. The big difference is that whereas the primarial agreement gives her what is essentially a life estate, the last will and testament just says, you know, essentially it only guarantees her residency until the child is 18, until which time I suppose it could be argued that her daughter could throw her out, even though it's highly unlikely to happen. But that is the big distinction between paragraph 4 of the primarial agreement and the provision relating to residency as specified in the last will and testament written three years earlier. We feel, first of all, because the parties did not include the decedent's performance with respect to paragraph 4, since it was not specifically enumerated in paragraph 9, it was not part of the bargain that brought about the waiver of her right of renunciation. And it's a separate agreement. It's obviously in the same primarial agreement, but paragraph 4 was not a condition preceding that brought about her renunciation. Well, you're right. It should be enforceable, should it not? It could, yes, absolutely be enforceable. And I feel that if, and I think it's worth pointing out, that at no time has my client as the executor, as the future trustee, or no one has ever tried to evict her from the house. So we also take a little issue with possibly that there's no case in controversy over paragraph 4. I think we, I can't stand here and represent to you that he actually did modify his will or that the will mirrors the language from the primarial agreement with respect to paragraph 4. It doesn't. It's not like someone came and took a copy and paste and did that. I'm not going to represent to you that they match. They don't. However, I don't see a dispute there because no one actually ever tried to kick her out. And if they tried to kick her out, the remedy would be... Why can't this controversy be resolved by enforcing paragraph 4, then? That's exactly my point. I feel that if someone actually tried to evict her, whether it be my client until the child is of age, and then, I guess potentially, her own daughter, who will inherit all of this when she reaches that certain age, if someone tries to kick her out, she could cite the primarial agreement and say, invalidate the entire primarial agreement. Now, what the trial court found was that... If paragraph 4 were enforced, your position would be there was no breach of the agreement, then. Is that a simple way of stating it? If I understand, yes. Would both parties have received what they bargained for in their anti-nuptial agreement if paragraph 4 is enforced? Yes. And in fact, she did. If I understand the question right, yes. In fact, she did. No one ever tried to kick her out. She lives there, and she has lived there at all times. So, yes. Is that how you interpret enforcement of paragraph 4? Paragraph 4 is a... I think it's a private contract right. Paragraph 4 calls for the creation of a right within a will, or a trust document. Yes. And you've acknowledged that that was not done? They don't match, no. Isn't performance under paragraph 4, the creation of the will provision, or trust provision, not forbearance, when it comes to eviction proceedings? You're talking about allowing her to stay in the house, and that's performance under paragraph 4. Yes. Performance under paragraph 4 has to do with the execution of probate documents, not forbearance. Yes. And I think the central issue here is, of course, the trial court found that his non-performance of paragraph 4, I mean, I think, as I said, I'm not going to stand here and argue that he fully performed, because very clearly he did not have a Last Will and Testament on hand on the day of his death that specifically says she has what is essentially a life estate. That didn't happen. But what I'm arguing is that there was really no dispute, and if there were to be a dispute, if someone were to kick her out, then I think she had other performance under paragraph 4 is immaterial and has no bearing on whether or not the decedent fulfilled all of his obligations with respect to paragraph 9, which was the only paragraph where they specifically set out what was being negotiated. My question is, does this court have the authority to order the execution of documents which would comply, which would make both parties comply, particularly your That's an interesting remedy. I think that if Mrs. McNaught were to seek enforcement of that, I think an easy remedy, at least the way that I would suggest we address it, is that the estate would essentially execute a deed in her favor in giving her what the decedent did not give her as set forth in the estate plan. What happened with life insurance? The life insurance, he... Did she receive it? She received it. She's received in excess... We've all told it was in excess of $280,000. I'm not all too clear on that. I'm pretty sure that the document only gave her a right to 50% of his retirement accounts, but he actually left most of it to her. So she's already received and actually retained. And that's another fair point. I'm glad you raised that, because in addition to seeking to renounce the will and receive what was estimated between $2 and $3 million, this is a rather sizable estate. Her take would be between $2 and $3 million. I will be asking counsel his position on it, but are you suggesting that she got the life insurance proceeds, she gets the pension, and that was done pursuant to the prenuptial agreement, and yet then she gets the benefit of those two provisions and can still Is that what happened? That is exactly what happened. She quickly collected the money from the retirement accounts and the life insurance policy. She was also given a few things under that last will and testament that she's renounced. She's also retained those will. Granted, they weren't very much. I mean, there's a vehicle and household items and that, but she has retained all of that. So I think it's a fair point that she's retained all the benefits from both the last will and testament that she is now seeking to renounce and the premarital agreement that was in the last will and testament, I'd say making a mountain out of a molehill and asserting that he didn't fulfill his obligations. I'm sure David may not, which was great, thinking that he met his obligations. In fact, he died about eight years after this agreement was signed and they got married. I also feel it odd that they were able to retain, not able to retain, but they have since retained all of these assets and they're also seeking to lob on another between $2 and $3 million in a one-third share of the overall estate, depending on how it's ultimately valued. I want to go back to something that you said previously in response to a question Justice Turner asked you, and that is what can be done after the fact as to performance under Paragraph 4? And you indicated that potentially there could be performance following the decedent's death. Do you have any case law in support of that? I don't. I certainly don't think that we can go back in time and have them execute a new will or trust to strictly fulfill the promises in there. But the benefit of the bargain in Paragraph 4 only was, I suppose, not in exchange for a waiver of the right to renounce, but perhaps in consideration of marriage and the other aspects of the premarital agreement, was that she was permitted to stay there for life. No one has ever threatened her ability to do that, and I think that creative attorneys in the court, in the probate court, has the ability to fix that. Granted, we can't go back in time and write it in, but I think she has a contract where it says, hey, I bargained for this. He never put it in his will. I'm allowed to stay here. Executor, you should do something, execute some will, which is within her power to do. Among the many duties that executors have is to execute deeds and other conveyances and to carry out the decedent's wishes, and I think the executor would certainly be willing to do that in fulfillment of the decedent's obligation. I think it's the most that we can do following his death, but I believe we can do it. Was that done in the trial court, that being an offer made by the executor? We never got that far. We're here today because the trial court granted a motion for judgment on the pleadings. Really, all that ever happened. Between the 6th and 7th month, she filed her renunciation instrument. A few weeks later, I filed a response saying, hey, we have this primarial agreement over here where she waived the right to do what she's attempting to do, and the decedent fulfilled his obligations here, here, and here. And then he immediately, and then we have a motion for judgment on the pleadings. We heavily brief it back and forth. It's eventually argued, and the court grants the motion for judgment on the pleadings. So we never had an opportunity to get, we never got that far. Getting back to what Justice Turner was initially asking, does this court have the authority to order the executor to do something? It's a different posture than what you're suggesting, that you think the executor might be willing to do that. If the offer was not made in the trial court, what we're left with is on this particular issue, determining whether we have the authority to order the executor to do it. And we'd have to presume, based on the record, that we would be forcing the executor to do something that he's not willing to do. Right. And I, as far as this goes, and that's what we're asking you to do, because we feel that, so I think that's something that could be worked out and the trial court could order, if she were to come in and assert a contract right, hey, I can do this. I think the trial court has the ability to compel her to do that if she's unwilling. But we literally didn't get that far. Because they immediately filed a motion for judgment on the pleadings, followed by a motion to stay discovery. We were limited to what was on paper. And unfortunately, the court made a specific finding that the documents are unambiguous and extrinsic evidence cannot be considered. And we feel that the court granting this motion for judgment was highly premature. We weren't given an opportunity to work up any facts or including whether or not the potential breach of Paragraph 4 was a breach of Paragraph 4. Mr. Randall. Please support, counsel. I think, and just at the end of the argument, we touched on what I think is the significant issue here. We are here on review of whether Judge Madonia erred in granting judgment on the Paragraph 4. The Paragraph 4 that was couched as an affirmative defense was basically a contract action to enforce a single provision of that contract. The contract itself had a number of obligations on both parties, both as to postmortem, if you will, or as if their marriage should end in divorce. There were exchanges of consideration back and forth for entering into this agreement, which bound them both in a divorce context and after either one of their deaths. There were four elements of consideration specifically enumerated that were to be performed by the decedent prior to his death, one of which was to afford his wife a home for life, the marital home for as long as she chose to be there for her life. A pleading was filed and because it was a contract action, there is an element of conditions preceded, which were specific to that Paragraph 9, but conditions and obligations of the contract itself. Because the rule, and I don't think there's ever been a dispute with this, the law is that the plaintiff seeking to enforce a contract or recover damages on a contract has to prove, plead and prove, his own performance. The pleading that was filed never alleged that element of the case. In fact, it just simply attached the agreement and the will, which on its face established he did not perform one of his obligations. Well, Counselor, just so I understand, so you do not want enforcement of the contract? That would be your client's position? No, Your Honor. Well, do you want the benefits of Paragraphs 6 and 7 in the contract? Well, let me put it this way. The plaintiff had a duty to do three things, or four things actually. Okay, I know where you're going to go with this. I'm having a hard time getting in contract law to the conclusion that I know you want me to reach, and is that your client gets the benefits of Paragraph 6 and 7 under the contract, but because Paragraph 4 was not honored, the whole thing can be rescinded essentially, but yet she still keeps those benefits. I'm trying to figure out how that can be consistent with contract law when there's a breach and what the remedies would be. Well, and here's the problem, Your Honor. That's why I started with, we're here to review the propriety, whether or not Judge Madonia erred. Yeah, but if we rule in your favor, all those questions that I have in my mind that I've just tried to articulate to you won't make any difference, will they? Well... If we rule for you, your client will get the benefit of Paragraphs 6 and 7 and still be able to renounce. Is that correct? Well, let me, yes, that is correct. Because that's the end of the case. However, she had... If we rule for you on the court's order on the judgment of the pleadings, that's the end of the dispute that's before us right now. And that would be true in the posture the pleadings were in when the issue and the motion were raised before Judge Madonia. I get that legal argument, but for some reason it just strikes me as being inequitable. And where am I wrong there? Well, all of the things that have been discussed, or most of them, were never pled. There was never any suggestion that this provision meant anything other than what it said. There was never any some element or equitable defense or something like that. See, the posture we're in, getting back to your question, is she has, by statute, an absolute right to renounce her husband's will unless she can present an enforceable premarital agreement or some other agreement obviating that, tested by all the rules governing those kinds of actions, the high degree of proof and all those things. But that contract action was charged not in the sense of probate law or even contract law, but in the context of the Civil Practice Act. Well, let me stop you here for a moment. I'm not sure that this is in the record and we should be considering it, but questions were asked of Mr. Carothers as to whether or not performance had been obtained in regards to paragraphs 6 and 7. Is that in the record? For purposes of the Court's motion, Judge Madonia's motion, yes. Okay. So if it's in the record, then we can consider this. Then, addressing the concern, if the State has already complied with paragraphs 6 and 7 and performed, and then the premarital agreement is determined to be unenforceable given paragraph 4, what happens to the State's right to recover or recoup the benefits that were paid out in paragraphs 6 and 7 that are unenforceable by judicial determination? Well, this is the having your cake and eating it too dilemma. This is the equity argument. I believe that Justice Turner was advancing here, or concerned. So, I mean, is that an if two provisions have been complied with, 6 and 7, then your client seeks a determination that the entire agreement is unenforceable given non-performance in paragraph 4 and seeks to renounce under the will. So, where do we stand on that? Well, my problem, Your Honor, is that we are now discussing things that were never before in the trial. Maybe that's the reason why judgment on the pleadings should not have been granted. Possibly. Well, I would disagree because otherwise... I'm really not trying to argue. Legally, your argument makes sense to me. But from an equity standpoint, as I've already said, I'm being redundant now. It just doesn't seem fair, I guess. Is there a legal mechanism for recoupment of those benefits paid out? I can't say one way or the other, Your Honor. I would think they could just set it off against the one-third renunciation, but maybe not. That's possible. But we don't get to consider any of that if we ruin your favorite day. I think it's dispositive. It is, Your Honor, but basically the issue we're talking about here is appellate review, not of the pleadings that were before the court, but of things that might have been pled or asserted. This complaint didn't even allege performance of any of the obligations, only these conditions preceded it. Well, as I understand it, there isn't an assertion being made of equitable estoppel that your client has sought performance of certain provisions of the premarital agreement and then seeks to have it found unenforceable. I don't believe that was raised on appeal. Okay. All right. So I understand the legal posture here. Getting to the materiality argument that was made by the estate as to Paragraph 4, the estate is saying it's premature for the trial court to have made the determination it did as to Paragraph 4 that it was a material breach and that there should have been additional discovery obtained to determine whether or not that actually was a material breach. What are your thoughts in that regard? Again, Your Honor, this was a judgment on the pleadings. A motion for judgment on the pleadings that was filed and 10 months elapsed, during which time the pleadings were never amended, despite whatever issues could have been raised. There was not even a statement that legal conclusion that we performed all material obligations. The burden, I mean the law presumes every provision in an agreement is purposeful. That's particularly applicable where the provision in question is an element of the consideration, not for a specific promise, but the agreement as a whole. But non-performance on a minor, what would have to be considered a minor provision in a contract can't be under all circumstances considered to be a material breach such that it makes the agreement unenforceable. You're not arguing that any non-performance in an agreement would result in a finding of unenforceability. But what you're suggesting here in this case is Paragraph 4 on its face was a material term of the agreement. The estate is not challenging non-performance here. Therefore, the trial court was well within its rights to find it a material breach and therefore the entire agreement unenforceable. Yes, Your Honor. Because it's an element of the contract action itself that has to be planned. This complaint was never amended. All the court had was the complaint, which made no such allegation, the documents, which established he had not performed an obligation, the presumption that all obligations are material, that the parties put them in there for a reason and expected them to be performed. Nothing on the pleadings, and with ample time to pending, gave any indication or assertion of any of these matters. Only in hindsight were the trial judge rule applying undisputed law as far as the elements to be pled and proved by the plaintiff. In fact, there's reference in both briefs to the IPI instructions and they require as a burden of proof in any contract action for the plaintiff to prove, therefore plead, his own performance or an excuse for that performance. That was never done here in ten months. It wasn't done after the court's order. So that now we're asked to review Judge Madonian's order based on things that were never put before him. He was asked to enter judgment on the pleadings based on the simple fact that an element of the cause, we're not talking about resolving the issues because they weren't these other issues we're discussing, were raised. He was faced with the pleading that did not allege that he performed all material provisions or that this provision wasn't material for some reason, and the documents he incorporated established that he didn't perform an obligation of significance to Mrs. McDodd. They elected to go that route and now we're appealing and asking this court to reverse Judge Madonia based upon things that despite ample opportunity to do so, weren't presented to him. Equitable arguments, all of them could have been, and as far as some of the questions, it could have been researched and asked by simply amending the complaint. The issue of the pleadings were taken off the table. Then we move on to summary judgment or what have you. But by standing on the pleadings, that's all Judge Madonia had. And now we're looking at it as but what if? What if this were like a summary judgment? It wasn't. He had... Let me ask this counsel, I don't think I've ever seen it, but as you well know, a court can grant a motion to dismiss and give the losing party leave to amend the complaint for the pleadings. Can the same thing happen when a court grants a judgment on the pleadings? Judgment granted, however, 30 days to amend the complaint or pleadings. I personally don't think so. I don't think so either, Your Honor, because it's the difference between a motion to dismiss and a motion to judgment. Because the motion itself puts the party, the plaintiff, on notice that, okay, there's these issues, these defects in your pleading are raised. Your pleading does not define or raise any of these issues. That sounds reasonable to me. Let me ask you this, though. Paragraph 9 specifically references paragraph 6 and 7. It does not reference paragraph 4. Why should I ignore that? Well, they're asking, the context that that would come in would be with regard to the separate issue of these specific conditions preceded. Because basically the argument that they didn't include that is that by the drafting of this thing, we gave you paragraph 4, a place to live for life, but because we didn't mention it here, somehow your duty to perform that goes away. The duty to perform the contract is a contract as a whole. There are a lot of things you could put as conditions preceding independent of clarification. I don't know if that answers my question. Paragraph 9 does not reference paragraph 4. And you're saying that doesn't make any difference? It's irrelevant? Not by number, Your Honor. But as the trial court in its detailed opinion on this recognized that the duty that is in there, which is part of the duty under paragraph 19 to provide a will contemplates a new will to begin with. Rather than... What consideration did your client provide in signing the antinatural agreement? What was the consideration? What did she receive or what did she give up? What did she give up? She gave up substantially all marital rights she would otherwise have if the parties were to... More specifically, please, what did she give up? Her right to maintenance, her right to share in an equitable division of his marital property, and the right that we're talking about. The right to renounce, correct? Right. Okay, so what was the consideration she gave up? She gets, and again, since we're kind of talking about Dior as the record, because none of these things were raised... Well, if it's not in the record, you don't have to respond. I mean, there were things, and that's the disadvantage with taking these things up based on just speculation. And that's why I tried to focus on what the trial judge had before him. All of these things could have been raised and put at issue. They weren't. Instead, we have to come up here and basically ask this court to step beyond and apply an equitable interpretation of things that were raised and put at issue. Okay, counsel, you're out of time. Thank you for your argument. Much appreciated. Any rebuttals? First and foremost, it was often said that our defense relating to paragraph 4 was never raised. Just for a quick history on it, they filed a renunciation of the last one testament. We filed a response where we asserted that the decedent completely performed with all aspects of paragraph 9, because again, that was the only paragraph that referenced the waiver of her right to renounce. Paragraph 4 wasn't mentioned, as I've stated. So that is why we didn't directly address paragraph 4, because then as now, we contend it's immaterial and has no bearing on the performances and obligations in paragraph 9. So that is why it was not specifically raised in our initial response to his instrument of renunciation. However, what was not raised, and what the record clearly shows, is that we briefed this extensively, back and forth, in the months from when he filed the instrument of renunciation until we actually had oral argument. We thoroughly covered this issue with paragraph 4 in our defenses and all of these other pleadings. And as the court references in its rather lengthy order, he cites the positions that we raised. And of course he disregards them, but I think the record clearly shows that we raised all of these concerns, defenses, the performance with respect to paragraph 4, in the trial court level. So you have plenty to review on that, and it most certainly was raised there. I think it's also important that we not lose sight of the fact that, and there was also talk of burdens. And clearly throughout, as we argue in our brief, there's this effort to shift the burden to us. Now, what is this? This is a probate state where the widow has tried to do something that we contend she's not legally able to do. And then, I assume if this went all the way to a trial, or across motions for summary judgment, the burden might be, as he suggests. But this is a motion for judgment of pleadings. And as such, all assumptions, all facts should be interpreted in favor of the non-moving party. And only what should be considered as paper that's on record with the court. There's also arguments that we never amended it, that we didn't work it up. As I mentioned earlier, they filed a renunciation, we filed a response. The next thing that he files is a motion to stay discovery. Which was, I reviewed the docket entry recently, and I don't remember, 18 months ago at this point. But we apparently did present it to the judge, because there's a docket entry in April, about a month after we filed our response that says the issue of discovery, staying discovery is reserved. So it was never taken up. Despite that, we went ahead and tried to admit extrinsic evidence. We presented an affidavit that was signed by the attorney who drafted both the premarital agreement and the last will and testament. Immediately, as soon as we tried to do that, they filed a motion to strike. So this idea that we didn't take advantage of opportunity to work up the case, to introduce extrinsic evidence, amend our pleadings, et cetera, that's just not what happened. We briefed this extensively. Our basic position is that paragraph 9 does not include any reference to paragraph 4. They were essentially seeking to amend the premarital agreement after the husband's death to add a performance of an obligation in a different part of the agreement. We feel that his alleged failure to perform on paragraph 4, I think she has other rights and remedies with respect to that that don't include renouncing the entire will, but while retaining the benefits from the will and from the paragraph 6 and 7. And I think there was a question asked of Mr. Randall. The court made a specific finding that the decedent did undeniably, indisputably perform paragraph 6 and 7 of the agreement that's in here. And in closing, I would just suggest that the defendant's breach of paragraph 4, whether or not it's material, that we certainly don't feel that the record reflects that it was material. We argued throughout that paragraph 4 had no bearing. If this were sent back, and what I'm asking the court to do, obviously, is reverse and remand this. This court obviously has the option, I think, of either thoroughly examining and analyzing everything and concluding whether or not she can renounce, or you could simply reverse the court's order on the motion for judgment on the pleadings and say, it clearly hasn't been worked up. The planning of this motion was premature, and we're directing the court, we're reversing the court for further hearing. I think those are the two options before the court here, but what we're asking you to do. Well, if we do that, the trial court's going to have a problem, so what's the appellate court doing here? What are they telling me? I would certainly prefer that you thoroughly analyze it and you go back and make a finding as to whether or not she can renounce, whether or not paragraph 4 was materially breached, and even if it was or not, whether that has anything to do with the bargain for exchange in paragraph 9, which brought about the waiver of her right to renounce. Okay, thanks to both of you. The case is submitted and the court stands in recess.